**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CASE NO. 3:06-CR-00105-R**

**UNITED STATES OF AMERICA**                                                                    **PLAINTIFF**

**v.**

**CARTER EUBANKS, JR.**                                                                                **DEFENDANT**

**MEMORANDUM OPINION & ORDER**

This matter comes before the Court on Defendant's Motion to Suppress Statements (DN 51). Plaintiff has responded (DN 54), and a suppression hearing was held on September 2, 2009, in Louisville. This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion is DENIED.

Also before the Court is Defendant's Motion to Bifurcate Counts 4, 8, and 12 (DN 41). Plaintiff has responded (DN 47). No reply was filed. This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion is STAYED.

Finally, before the Court is Plaintiff's Notice of 404(b) Evidence (DN 34). Defendant filed a response and objection (DN 44), and Plaintiff replied (DN 48).

BACKGROUND

Defendant Carter Eubanks, Jr., has been charged with robbing three banks in Louisville, Kentucky: the PNC Bank at 9700 Linn Station Road on March 24, 2006, the Republic Bank at 4921 Browsboro Road on April 17, 2006, and the PNC Bank at 4810 Brownsboro Road on May 23, 2006. Defendant was arrested on June 16, 2006, after robbing the Merchants and Farmers Bank in Ridgeland, Mississippi. He was in a vehicle driven by his brother when they were apprehended by the Jackson Police Department. Officer Rushing testified at the suppression hearing held on September 2, 2009, that he arrested Defendant, read him his *Miranda* rights, and

placed him in his cruiser. Rushing stated that on their way to the cruiser Defendant insisted that he was involved in the robbery alone and that he was on the run from Kentucky.

Some time later, Ridgeland Police Sgt. Revelle Dixon arrived on the scene and transferred Defendant from Rushing's cruiser to his patrol car.[1] As Dixon was escorting Defendant to his vehicle, Defendant made several incriminating statements that were recorded by local media outlets who had cameras on the scene. Once in his vehicle, Dixon activated an audio device which recorded the conversation between him and Defendant. When Defendant began making additional incriminating statements, Dixon attempted to advise Defendant of his *Miranda* rights. Defendant told Dixon he was already advised of his *Miranda* rights, and when Dixon said that he was going to re-advise him Defendant began reciting: "I got a right to remain silent, I got a right to an attorney, everything I say will be used against me in a court of law, I understand my *Miranda*, I have been in the court system all my life." Defendant then confessed to the three bank robberies in Louisville and the bank robbery that day in Mississippi.

After Dixon drove Defendant by the Merchants and Farmers Bank for a show-up identification, he took him to the Ridgeland Police Department for questioning. Ridgeland Police Detective Frank Dillard testified at the hearing that prior to questioning he advised Defendant of his *Miranda* rights orally and in writing. Defendant's *Miranda* warning card was submitted into evidence at the suppression hearing as Exhibit 4. Also submitted into evidence

---

[1] Defendant claims that he was in Rushing's cruiser for over an hour. The Merchants and Farmers Bank was robbed at approximately 1:00 p.m. Defendant was apprehended at approximately 1:20 p.m., ten to twelve miles from the bank. Officer Dixon testified that he arrived on the scene of the arrest at approximately 1:30, and was on the scene for approximately twenty-five minutes before he removed Defendant from Rushing's cruiser. According to this timetable, Defendant could not have been in Rushing's cruiser for more than approximately thirty minutes.

was the DVD of the interview conducted by Dillard. During or after this interview, Dillard stated that Defendant threatened to recant his confession if his brother was charged with a crime.

Defendant was also interviewed later that day by FBI Special Agent Christopher Michaelson. Michaelson advised Defendant of his *Miranda* rights and memorialized the interview in an FD302 form, which was submitted into evidence.[2] During his interview, Defendant described the Louisville bank robberies in detail and initialed photographs of him robbing all three Louisville banks. Defendant also stated that his brother was not involved, and again threatened not to cooperate if his brother was charged.

Defendant also testified at the suppression hearing. He stated that Rushing left him in the police cruiser with no air conditioning for so long that he claims he began bashing his head against the window in order to get the attention of the officers.[3] When Dixon removed Defendant from Rushing's cruiser, Defendant was grateful and stated that his confession in Dixon's car was voluntary. Defendant also testified that before Dixon arrived he was concerned that someone would kill him or kill his brother, but admitted that he was not threatened and that he did not tell anyone that he feared being harmed. He also testified that he was not coerced into confessing.

I. MOTION TO SUPPRESS

Defendant now moves to suppress any statements made to agents of the government, as

---

[2] Mysteriously, the signature on the *Miranda* advice of rights form attached to Defendant's FD302 is signed "Dwight Eubanks," the name of Defendant's brother. Michaelson testified that he does not know how this happened because he does not recall formally interviewing Dwight Eubanks, and suggested that one possibility is that Defendant signed his brother's name.

[3] Rushing does not recall Defendant bashing his head on the window of the cruiser.

well as any evidence derived directly or indirectly from those statements, pursuant to the Fifth and Sixth Amendments to the United States Constitution. "The Fifth Amendment prohibits the prosecution's use of a defendant's compelled testimony." *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994) (citing *Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985)). "A statement is not 'compelled' within the meaning of the Fifth Amendment if an individual 'voluntarily, knowingly and intelligently' waives his constitutional privilege." *Colorado v. Spring*, 479 U.S. 564, 573 (1987) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).

"[T]he determination [as to] whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel." *Fare v. Michael C.*, 442 U.S. 707, 724 (1979) (citing *Miranda*, 384 U.S. at 475-77). The totality of the circumstances can include such factors as "age, education, and intelligence of the defendant; whether the defendant has been informed of his *Miranda* rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as deprivation of food or sleep." *McCalvin v. Yukins*, 444 F.3d 713, 719 (6th Cir.2006) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). "The warning must reasonably convey to a suspect his rights under *Miranda*, though no 'precise formulation' or 'talismanic incantation' is required." *United States v. Hopson*, 134 Fed. App'x 781, 786 (6th Cir. 2004) (citing *Duckworth v. Eagan*, 492 U.S. 195, 202-3 (1989)). Additionally, "a promise of lenient treatment or of immediate release may be so attractive as to render a confession involuntary." *United States v. Wrice*, 954 F.2d 406, 411 (6th Cir. 1992).

Looking to the totality of the circumstances, the Court finds that all of the statements made by Defendant to agents of the government on June 19, 2006, are admissible. The evidence demonstrates that Defendant knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel. He repeatedly volunteered the information that he robbed the banks in Louisville. He never asked for an attorney or stated that he wished to stop talking. Defendant was advised of his *Miranda* rights at least three times: by Rushing immediately upon arrest, by Dillard prior to questioning by the Ridgeland police at the station, and by Michaelson prior to questioning by the FBI. He signed at least one written waiver of his rights. Also, when Dixon attempted to advise Defendant of his *Miranda* rights in Dixon's vehicle, Defendant told him that he had already been advised, recited most of the warning, and proceeded to confess again. The fact that Dixon did not read the rights or that Defendant did not recite that if he could not afford an attorney one would be appointed to him is not enough to suppress his confession, especially because he testified at the hearing that his confession in Dixon's car was voluntary.

Moreover, Defendant admitted that he was not coerced or threatened. His fears that the local Mississippi police would harm him were not based on anything that they said or did to him. Defendant's account that he was left in Rushing's vehicle for over an hour is not supported by the evidence, nor was it argued that this experience made any of his statements involuntary.

Defendant also argues that his statements should be suppressed because unlawful promises were made to him in order to get him to cooperate. At the hearing, Dixon testified that he told Defendant that they would "do the right thing" by his brother. Michaelson also admitted that he told Defendant that the FBI would have no federal interest in his brother if Defendant

5

cooperated. The Court finds that neither Dixon's statement nor Michaelson's assurance renders Defendant's statements involuntary. Dixon's statement is vague and no guarantee of anything. More importantly, both Dixon and Michaelson were responding to Defendant's insistent statements that his brother was not involved, requests that his brother not be charged, and threats that if he were charged Defendant would recant his confessions and cease cooperation. No evidence indicates that Defendant was pressured, abused, or coerced into confessing; nothing rose to "the level of an irresistible inducement that would render the confession involuntary." *Wrice*, 954 F.2d at 411.

Finally, Defendant argues his statements should be suppressed because he was unable to fully understand the rights he was given due to his limited mental capacity and the fact that he was under the influence of intoxicants, including prescription medicines. Defendant did not submit evidence of a limited mental capacity or evidence that he was under the influence of intoxicants at the hearing. Dixon testified that Defendant told him that he was on Seroquel, which he said leads to compulsive behaviors, and Michaelson also testified that Defendant told him about taking psychological drugs and drinking. Defendant, however, did not give the government agents any indication of a lack of understanding of his rights. In fact, he explicitly told Dixon "I understand my *Miranda*." Rushing, Dixon, Dillard, and Michaelson also all testified that Defendant indicated he understood his rights. The Court therefore finds that this is not a basis to suppress Defendant's statements.

## II. MOTION TO BIFURCATE

Additionally, Defendant moves pursuant to Federal Rule of Criminal Procedure 14 to bifurcate Counts 4, 8, and 12, charging Defendant with being a felon in possession of a firearm,

from the remaining counts in the Indictment. He argues that the bank robbery and 18 U.S.C. § 924(c) charges will control the sentence, and so the only purpose of the felon in possession count is to allow the jury to know Defendant is a convicted felon. The United States argues that Defendant's motion is untimely. On the merits, the United States argues there is no justification for separate trials because the proof is essentially the same, because it may choose to try the felon in possession charge first, and because the Court may give an appropriate limiting instruction. The Court will consider Defendant's motion.

Rule 14 provides that if the joinder of offenses in an indictment "appears to prejudice a defendant . . . the court may order separate trials of counts . . . or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "In order to prevail on a motion for severance, a defendant must show compelling, specific, and actual prejudice from a court's refusal to grant the motion to sever." *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005). In determining whether to grant a Rule 14 motion for severance, a court must balance "the interest of the public in avoiding a multiplicity of litigation and the interest of the defendant in obtaining a fair trial." *United States v. Wirsing*, 719 F.2d 859, 864-65 (6th Cir. 1983) (quotation omitted).

Here, trying the felon in possession counts after the other counts in the Indictment would be only a minor burden on the public. It would not take much time to present the evidence of the felon in possession counts to the same jury after they reach a verdict on the other counts. On the other hand, there is a real possible prejudice in the jury knowing Defendant is a convicted felon. Therefore, the Court is inclined to grant Defendant's motion. However, if Defendant decides to testify at trial this motion will be moot. The Court will consequently stay the motion and make its determination at trial.

### III. NOTICE OF 404(b) EVIDENCE

The United States has also filed a notice of its intent to introduce evidence of Defendant's armed robbery on June 19, 2006, of the Merchants & Farmers Bank in Ridgeland, Mississippi. The United States contends that the evidence will be used for identity purposes because Defendant used the same modus operandi in committing the Ridgeland robbery as he did committing the Louisville robberies.

Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs or acts is not admissible prove the character of a person in order to show action in conformity therewith," but may be admissible for proof of identity. "In cases in which the *identity* of the perpetrator of the crime charged is in issue, evidence that the defendant committed other acts utilizing the same *modus operandi* or method of operation as was employed by the perpetrator of the crime charged, is admissible as tending to prove that the defendant committed the crime charged." *United States v. Johnson*, 27 F.3d 1186, 1194 (6th Cir. 1994). "[I]f the method of operation employed in all of the crimes is essentially identical and sufficiently unique, the method can be said to be the 'signature' of the defendant, thus tending to prove his identity as the perpetrator of the crime charged." *Id.*

"'The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character.'" *Id.* at 1191 (quoting *Huddleston v. United States*, 485 U.S. 681, 686 (1988)). Then, even if evidence is determined admissible under Rule 404(b), it may still be excluded under Federal Rule of Evidence 403 if it is more substantially prejudicial than probative. The Sixth Circuit discussed the application of these two rules in one case as follows:

8

> When jurors hear that a defendant has on earlier occasions committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact. That, of course, is why the prosecution uses such evidence whenever it can. When prior acts evidence is introduced, regardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered; to suggest that the defendant is a bad person, a convicted criminal, and that if he "did it before he probably did it again." That is why the trial court's duty is to apply Rule 404(b) correctly and, before admitting such evidence, to decide carefully whether it will be more substantially prejudicial than probative. A legitimate component of that weighing process is the trial court's informed judgment whether, despite the "technical" admissibility of the other acts evidence, the jurors are more likely than not to use the evidence for the very purpose for which the first sentence of the rule states that it may not be used.

*Johnson*, 27 F.3d at 1193. "Furthermore, the prior acts generally must be relevant to a matter at issue and must be substantially similar to, and near in time to, the offense charged in the indictment." *United States v. Ismail*, 756 F.2d 1253, 1259 (6th Cir. 1985).

As an initial matter, the Court finds that identity is a material issue in this case.

In support of its argument that Defendant's method of committing the Ridgeland bank robbery is essentially identical and sufficiently unique such that the method can be said to be the "signature" of the Defendant, proving his identity in the Louisville robberies, the government argues the following elements were the same in all of the robberies:

1. Defendant wore a mustache.
2. He wore a baseball style cap.
3. He put up his ponytail with rubber bands so that it was hidden under his cap.
4. He wore wire rimmed reading glasses which could be purchased at a drugstore.
5. When he announced this is a robbery, he ordered everyone to lie on the floor.
6. He brandished a semi-automatic pistol.
7. He jumped onto and over the teller's counter.
8. He grabbed one of the tellers by the arm and pulled her up off the floor.

9. At gunpoint he told her to empty the teller drawers.
10. He gave her a plastic bag.
11. He said he wanted the big bills.
12. He said I don't want to hurt anyone and don't take all day.
13. He said hurry up, it was taking too long.
14. After he had gotten the money, he told the teller to lie down on the floor.
15. He threatened to kill people in the bank if they did not do what he told them.
16. As he ran behind the bank to his car, he threw away the ball cap and glasses.

Two Sixth Circuit opinions are instructive as to whether the above elements are sufficient to allow evidence of the Ridgeland robbery to be admitted in this matter. In *United States v. Perry*, the court affirmed the trial court's determination that circumstances surrounding bank robberies were sufficiently unique to create a "signature." 438 F.3d 642, 648 (6th Cir. 2006). In that case, the defendant entered both banks carrying a gun in a book bag and seeking change for fifty dollars, sought purchase money orders, and then removed his gun. *Id.* In *United States v. Mack*, the court agreed with the district court that the similarities between bank robberies presented an unusual and distinctive enough pattern to constitute a "signature." 258 F.3d 548, 553-54 (6th Cir. 2001). The elements of the robberies in that case were "(1) the use of a ski mask in conjunction with a hooded sweatshirt, (2) by a person who always burst into the bank and leaped over the teller counter, and (3) then leaped over the teller counter again to leave." *Id.*

In view of this Sixth Circuit case law, the Court finds the elements outlined by the government here to be essentially identical and sufficiently unique, in combination, to be considered the "signature" of Defendant. Though each element individually may not be particularly unique in bank robberies, Defendant's disguise, combined with his actions in the banks, combined with the manner of disposal of evidence is unique enough in combination to

tend to prove his identity.

There is no evidence submitted of these similar elements, however, beyond what the government listed in its brief. Therefore, before deciding whether evidence of the Ridgeland robbery is admissible, the United States must first submit evidence of these signature elements at trial. Additionally, evidence of the Ridgeland bank robbery is complicated by the fact that it provides the background of the arrest of Defendant. This arrest provides the reason and context of his confessions to these charges. Should Defendant place the voluntariness or accuracy of the statements or events in dispute, the totality of the picture most likely will be required. It may be possible to dilute or avoid testimony of the reason for the arrest. However, that does take the statement out of context. Therefore the parties shall confer about this issue of avoiding the context of the arrest.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1) Defendant's Motion to Suppress Statements is DENIED; and

2) Defendant's Motion to Bifurcate Counts 4, 8, and 12 is STAYED; and

3) The matter remains set for trial for December 14, 2009. A telephonic status conference is set for October 15, 2009, at 12:00 Louisville time.